J-S19042-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TRACY ELLEN BERNOTAS | : | |
| | : | |
| Appellant | : | No. 984 WDA 2025 |

Appeal from the Judgment of Sentence Entered February 26, 2025
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0000931-2022

BEFORE: SULLIVAN, J., NEUMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED: July 14, 2026**

Appellant, Tracy Ellen Bernotas, appeals from the judgment of sentence entered in the Court of Common Pleas of Allegheny County following her conviction at a non-jury trial on the charges of driving while under the influence ("DUI")-controlled substance-1st offense, careless driving, windshield obstructions and wipers, and driving on roadways laned for traffic.[1] After our careful review, we affirm.

The relevant facts and procedural history are as follows: On March 25, 2022, the Commonwealth filed an Information charging Appellant with the

---

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3802(d)(2), 3714(a), 4524(b), and 3309(1), respectively.

aforementioned offenses.[2]  On November 15, 2024, and December 2, 2024, Appellant, represented by counsel, proceeded to a non-jury trial.

At trial, the Commonwealth offered the testimony of Pittsburgh Police Officer Nathan Powers, who has been assigned to the traffic division since 2016.  N.T., 11/15/24, at 5.  Officer Powers testified that he has been trained in DUI enforcement and detection, including the use of standardized field sobriety tests.  *Id.* at 6.  He indicated that he attended the Advanced Roadside Impaired Driving Enforcement class, became an instructor to other police officers regarding the administration of standardized field sobriety tests, and became a chemical breath test operator.  *Id.*  Additionally, in July of 2021, he became a drug recognition expert.  *Id.*

Officer Powers explained that, as a drug recognition expert, he has been trained in detecting controlled substance impairment, as well as screening out medical impairment. *Id.* at 7-8.  He noted that, to become a drug recognition expert, he had to attend "very elaborate in-person schooling with multiple tests, along with quizzes, every single day," and he had to pass a final test. *Id.* at 10.  In addition, he had to conduct a minimum of twelve evaluations for DUI on volunteers with an accuracy rating of 75% to be certified as a drug recognition expert.  *Id.*  He noted that, every two years, he has been

---

[2] In addition to the crimes for which Appellant was convicted, the Information also included a count of DUI-controlled substance under 75 Pa.C.S.A. § 3802(d)(1).  However, prior to Appellant's trial, the Commonwealth withdrew this count.

recertified as a drug recognition expert by, *inter alia*, attending continuing education classes. *Id.* at 11. He was recertified in 2023, and he opined that he has conducted approximately 200 drug recognition evaluations. *Id.* at 12.

Officer Powers testified that, on August 25, 2021, he was on routine patrol on Becks Run Road when, at approximately 11:45 p.m., he observed a silver sedan traveling ahead of his marked patrol vehicle. *Id.* at 14. The officer observed that the area was posted 35 miles per hour; however, the silver sedan was traveling at a speed over this limit. *Id.* The officer observed as the silver sedan traveled over the center yellow lines multiple times, including cutting corners in areas that were not safe to do so. *Id.* at 15.

Officer Powers testified that he followed the silver sedan for approximately one minute, and he stopped the silver sedan after it straddled the center yellow lines and crossed halfway into the opposing line of traffic. *Id.* at 17. Officer Powers indicated he was concerned that the driver "might crash into somebody else," so he activated his cruiser's lights and sirens. *Id.*

The driver, later identified as Appellant, stopped the silver sedan, and Officer Powers approached the front passenger side window. *Id.* at 18. The officer testified that he "spoke to [Appellant] about why she was driving across the yellow lines, and she stated multiple times that she knew that she was driving---that she was trying to keep her mom's car safe, and that she was speeding a little bit because she was on cruise control." *Id.* Appellant suggested that she was swerving to avoid potholes. *Id.* at 21. Officer Powers

testified that he had observed no potholes, which might justify a driver to swerve, and he had no reason to swerve his patrol cruiser while following Appellant. *Id.* at 18.

Officer Powers testified that, as he stood by the front passenger side window and spoke to Appellant, he shined his flashlight into the floorboard area of the front passenger seat, and he observed that Appellant had "constricted pupils and droopy eyelids, which is not consistent with a normal driver" at night. *Id.* at 21. He noted that people normally have constricted, pinpoint pupils at noon on a sunny day and dilated, bigger pupils at midnight in the dark. *Id.* He also noted that, per his training, he specifically did not shine the flashlight directly into Appellant's eyes so as not to affect her vision or the condition of her pupils. *Id.* at 23. He also turned off the flashlight and looked into her eyes, which still appeared to have constricted, pinpoint pupils. *Id.*

Officer Powers testified that, based on his training and experience, he was aware that "there's only one drug category that creates constriction of the pupils, and that is the narcotic analgesics." *Id.* at 22. Moreover, the officer testified that Appellant's droopy eyelids was an "indicator of someone under the influence of narcotic analgesics." *Id.* at 23. He noted that "narcotic

analgesics" include Suboxone,[3] fentanyl, heroin, methadone, oxycodone, and other controlled pain medications. *Id.* at 24. He indicated that this class of drugs can "absolutely" cause impairment while driving. *Id.*

Moreover, Officer Powers testified that, when he looked inside of Appellant's car, he noticed the rear seats had multiple trash bags filled with items, and the bags were "blocking the rear windshield, making it nearly impossible for [Appellant] to see out…of her rear windshield[.]" *Id.* at 28.

Because he suspected she was under the influence, the officer asked Appellant to exit the silver sedan, and he informed her that he was going to conduct field sobriety tests. *Id.* at 27. He asked Appellant if she took medications, and she answered "no." *Id.* at 30.

The officer then administered the "horizontal gaze nystagmus, the walk and turn, and then the one leg stand" tests. *Id.* at 31. While performing the horizontal gaze nystagmus test, Officer Powers noticed Appellant's pupils were still constricted. *Id.* at 32. To determine whether environmental light factors could be affecting Appellant's pupils, the officer looked at the pupils of his fellow back-up officer, whose pupils were not constricted. *Id.* Officer Powers noted that, for the horizontal gaze nystagmus test, he gave Appellant simple instructions, including that she must follow a stimulus with her eyes without

---

[3] Suboxone is a prescription medication that contains buprenorphine, which is classified as a Schedule III controlled substance, and naloxone, which is an opioid antagonist. *See Commonwealth v. Arnold*, 284 A.3d 1262 (Pa.Super. 2022). Suboxone is used to treat opioid addiction. *Id.*

moving her head; however, Appellant "repeatedly moved her head side to side despite being told to keep her head perfectly straight and just follow with her eyes." *Id.* The officer testified that Appellant's inability to follow basic instructions was a significant indicator that she was impaired. *Id.*

Regarding the walk and turn test, Officer Powers testified that he described the test to Appellant, including referencing a flat, well-lit, straight line on the concrete for Appellant to use, and he explained she would take nine steps down and nine steps back walking heel to toe on the line. *Id.* at 33, 37. He also told her she would be counting out loud as she took the steps. *Id.* at 33. The officer demonstrated the test for Appellant. *Id.* at 39. Officer Powers then asked Appellant if she had any medical injuries, which would prevent her from walking or performing the test. *Id.* at 33. Appellant responded that she had no reason why she could not perform the test. *Id.* at 33-34.

At this point, the officer noticed Appellant was wearing flip-flops and asked if she wanted to remove the shoes. *Id.* at 38. Appellant initially declined; however, after starting the test, she removed her shoes, indicating that she would perform better barefoot. *Id.* Officer Powers testified that Appellant was unable to maintain her balance during the walk and turn test, thus stepping off the line. *Id.* at 41. He also noted that Appellant did not follow directions, including keeping her arms down at her side while taking the steps, and she made a "perpendicular turn" at the end, which is "uncommon"

and demonstrates a lack of short-term memory. *Id.* at 42. Officer Powers testified that he has observed a driver make such a turn during the test perhaps "less than five times in [his] career." *Id.* He noted Appellant's "uncommon" turn demonstrated Appellant's inability to follow simple, basic instructions. *Id.*

Regarding the one leg stand, Officer Powers testified he instructed Appellant to "place [her] feet together, hands down at [her] sides and don't move from that position until told to begin the test." *Id.* However, Appellant "jumped the gun and started too soon." *Id.* at 43. Further, Appellant did not keep her arms down at her sides, she swayed while balancing, and after she was told to raise her one foot, she put it down prior to being told to stop. *Id.*

At this point, Officer Powers believed Appellant was driving while under the influence of a substance; however, since he did not smell alcohol, he believed the substance was a controlled substance. *Id.* at 44. Thus, he decided to give the three tests he learned from the Advanced Roadside Impaired Driving Enforcement training: the lack of convergence test, the modified Romberg balance test, and the finger to nose test. *Id.*

Officer Powers explained that the lack of convergence test involves an officer using a pen light stimulus and directing the driver to track the light of the pen with her eyes. *Id.* He testified Appellant was unable to track the light of the pen with her eyes; she "looked straight and centered vs. converging her eyes." *Id.* at 51.

Regarding the modified Romberg balance test, the officer explained he instructed Appellant to put her feet together, place her hands down by her side, tilt her head back, and close her eyes. *Id.* at 45. The officer then instructed Appellant that she should count for thirty seconds, and, when she believes she has reached thirty seconds, she should tilt her head forward, open her eyes, and tell the officer to "stop the clock." *Id.* Officer Powers testified that Appellant's estimate of thirty seconds was only nineteen seconds. *Id.* at 47.

Regarding the finger to nose test, Officer Powers explained that he commanded Appellant to tip her head back, close her eyes, and then touch the tip of her nose with her pointer finger, either with the right or left as directed. *Id.* at 46. Officer Powers testified Appellant "missed her nose several times" during this test. *Id.* at 49. He also noted Appellant had difficulty keeping her head in a titled back position and kept dipping her chin to her chest with heavy eyelids like she was sleepy. *Id.* at 50.

Officer Powers opined that, based on the multiple indications of impairment, not only those which he observed while conversing with Appellant but also her indicators during the standardized field sobriety tests and the Advanced Roadside Impaired Driving Enforcement test, Appellant was incapable of driving safely. *Id.* at 51. Officer Powers indicated he did not believe Appellant was under the influence of alcohol, but he believed she was under the influence of a controlled substance or some medication that she had

not declared. *Id.* at 52. He noted that, when Appellant walked to his police cruiser, he observed no issues with her walking, such as a limp. *Id.* at 57. Officer Powers testified that, despite indicating earlier that she was not taking any medication, Appellant told him, after she was handcuffed, that she was taking Suboxone and gabapentin. *Id.* at 53.

After Appellant was transported to the police station, the officer administered field sobriety tests again in a controlled environment. *Id.* at 55. At this point, Appellant, for the first time, informed the officer that she could not complete the walk and turn test because she had "a plate in her foot." *Id.* at 57. Appellant participated in the lack of convergence test, but she again stared straight and was unable to converge her eyes on the pen light stimulus. *Id.* at 58. Officer Powers asked Appellant to submit to a blood test, and Appellant agreed. *Id.* Accordingly, she was transported to the local hospital. *Id.* at 62. The results revealed Appellant's blood contained buprenorphine 2.7 nanograms per milliliter and norbuprenorphine 6.1 nanograms per milliliter. *Id.*

Appellant testified in her own defense. She testified that she is "disabled," and, as of August 25, 2021, she was homeless and living in the silver sedan. *Id.* at 93. Appellant admitted that she had several bags of items in the silver sedan on August 25, 2021; however, she denied that she could not see out of the rear window while driving. *Id.*

Appellant admitted that, on August 25, 2021, she took Suboxone and gabapentin; however, she claimed that she was taking the medicines as prescribed by her doctor. *Id.* at 94. Appellant presented the trial court with a prescription for Suboxone, which was marked as Defense Exhibit A; however, she claimed that she could not read the date on the prescription. *Id.* at 96. In any event, she claimed she had been prescribed and taking Suboxone for "seven, eight years." *Id.* Appellant testified she suffered no side effects from the Suboxone, and she denied that she was impaired while she was driving on August 25, 2021. *Id.* at 97.

Appellant admitted that she crossed the center yellow lines several times while she was driving on August 25, 2021, but she explained that she actively chose to do so because of "huge potholes, craters on Becks Run Road." *Id.* at 98. Appellant admitted that she had difficulty performing the various field sobriety tests, which Officer Powers administered to her. *Id.* However, she explained that she has "different things wrong with [her] body, surgery, things wrong with [her] back and foot surgery, and different things like that." *Id.* She noted that, as of August 25, 2021, she had a herniated disc in her back, arthritis, knee problems, and a "broken plate in [her] right foot." *Id.* at 98-99. She testified that she was in pain while she attempted to perform the field sobriety tests. *Id.* at 99.

Appellant testified that she had difficulty understanding Officer Powers' instructions during the various field sobriety tests because he "sounded like a

staff sergeant." *Id.* She was upset and overwhelmed because Officer Powers spoke quickly. *Id.* After watching the footage from Officer Powers' body camera, Appellant admitted that, prior to performing any field sobriety tests, Officer Powers asked her if she was taking any medications, and she answered "no." N.T., 12/2/24, at 11. Appellant testified that she had mobility issues when she attempted to perform the field sobriety tests, and these mobility issues related to her medical conditions, including foot, leg, and back injuries. *Id.* at 13.

Appellant called Dr. Lawrence Guzzardi, a board-certified medical toxicologist, as a witness. *Id.* at 15. Dr. Guzzardi testified that he limits his practice to providing consultations in emergency medicine, medical toxicology, and correctional medicine. *Id.* at 17. He noted that he has testified under oath approximately 75 to 125 times as an expert in emergency medicine and medical toxicology, and he has conducted research on field sobriety testing, as well as published peer reviewed articles on field sobriety testing. *Id.* at 23. The trial court permitted Dr. Guzzardi to testify as an expert in medical toxicology, particularly in the field of drug impairment recognition and field sobriety tests. *Id.* at 42.

Dr. Guzzardi testified that he reviewed the lab reports and prescription records related to Appellant, reviewed numerous scientific articles related to field sobriety testing, and interviewed Appellant several times. *Id.* at 45. He also viewed the video footage presented by the Commonwealth during trial.

Dr. Guzzardi opined that, based on the evidence, Appellant's prescription use of Suboxone did not impair her ability to drive safely on August 25, 2021. *Id.* at 48. To support his opinion, Dr. Guzzardi noted that Appellant's blood results showed that the levels of buprenorphine and norbuprenorphine in her blood on August 25, 2021, were in the therapeutic ranges. *Id.* Dr. Guzzardi indicated that, based on his review of Appellant's records, she had been taking Suboxone since 2013, and due to the length of time that she had been taking Suboxone, he would not expect Appellant to have any impairment while driving a vehicle. *Id.* at 51.

Dr. Guzzardi admitted that some patients abuse prescribed Suboxone, thus becoming impaired. *Id.* at 55. He testified the main symptom of Suboxone abuse is "sleepiness or drowsiness." *Id.* He admitted that patients who use Suboxone often have pinpoint pupils, but he testified this is not a sign of impairment. *Id.* at 57. However, he admitted that pinpoint pupils can limit a driver's visual field, particularly at night. *Id.* at 69. He opined that, since Appellant's Suboxone level was within the therapeutic range on August 25, 2021, she did not abuse Suboxone. *Id.* at 56.

Dr. Guzzardi testified that "the use of field sobriety tests on their own have not been shown to be an effective method in detecting drug impairment." *Id.* at 62. He admitted that Suboxone can impair a person's ability to drive safely during the "initiation phase;" however, because of the length of time Appellant was taking Suboxone, Dr. Guzzardi opined, to a reasonable degree

of medical certainty, that Appellant's prescription use of Suboxone did not impair her ability to drive safely on August 25, 2021.  *Id.* at 62, 80.  Dr. Guzzardi noted that, at some point after April 2, 2024, but before the first day of trial, he administered "informal" field sobriety tests to Appellant, and she was unable to complete the one leg stand and the walk and turn tests because of her medical problems.  *Id.* at 63, 66. He noted that, in addition to several injuries, Appellant has a loss of hearing, which may explain why she was unable to follow simple directions during the traffic stop on August 25, 2021. *Id.*

At the conclusion of the bench trial, the trial court convicted Appellant of the offenses *supra*. On February 26, 2025, the trial court sentenced Appellant to a four-day DUI-alternative to Jail Program and a concurrent six-month probationary term, with conditions that she pay the fines for the summary offenses.  On March 7, 2025, Appellant filed a timely counseled post-sentence motion contending the trial court's verdict was against the weight of the evidence.

On July 9, 2025, the clerk of courts entered an order denying Appellant's post-sentence motion by operation of law, and on August 7, 2025, Appellant filed a counseled notice of appeal.[4]  The trial court directed Appellant to file a

_____

[4] Rule of Criminal Procedure 720 sets forth the procedure to be followed when a post-sentence motion is filed.  Under this rule, the trial court must decide the post-sentence motion within 120 days of the filing of the motion.  **See**
*(Footnote Continued Next Page)*

Pa.R.A.P. 1925(b) statement, Appellant filed a Rule 1925(b) statement raising sufficiency and weight of the evidence claims, and the trial court filed a responsive Rule 1925(a) opinion.

On appeal, Appellant presents the following issue in her "Statement of the Questions Involved" (verbatim):

I.    Whether the trial court abused its discretion in denying [Appellant's] post-sentence motion for a new trial on the count of Driving Under the Influence-Controlled Substance, where the evidence overwhelmingly pointed to a non-substance-based origin of [Appellant's] perceived impairment?

Appellant's Brief at 7 (suggested answer and unnecessary bold omitted).

Appellant contends her conviction for DUI-controlled substance under 75 Pa.C.S.A. § 3802(d)(2) was against the weight of the evidence.[5]

―――――――――――――――――――――――――

Pa.R.Crim.P. 720(B)(3)(a). If the trial court fails to decide the motion within this period, it is deemed denied by operation of law. *Id.* Where a post-sentence motion is denied by operation of law, the clerk of courts is directed to enter an order on behalf of the court and "forthwith furnish a copy of the order…to…the defendant(s) and defense counsel...." Pa.R.Crim.P. 720(B)(3)(d).

In the case *sub judice*, the 120-period for decision on Appellant's timely filed post-sentence motion expired on July 7, 2025; however, the clerk of courts failed to enter an order denying the motion until two days later, on July 9, 2025, which constituted a breakdown in the court's processes. ***See Commonwealth v. Perry***, 820 A.2d 734 (Pa.Super. 2003). Appellant then filed a notice of appeal within thirty days of the July 9, 2025, order. Accordingly, due to the breakdown in the clerk of court's failure to timely enter the post-sentence motion order, we shall proceed to consider the issues raised by Appellant.

[5] Appellant presents no weight of the evidence claim regarding her remaining convictions.

Specifically, she claims the trial court's holding that she was impaired by a substance to the extent that she could not safely operate her vehicle was based on evidence so tenuous, vague, and uncertain that the verdict shocks the judicial conscience.[6]

---

[6] We note that, to the extent Appellant's brief conflates weight of the evidence and sufficiency of the evidence claims, we remind Appellant that such claims are distinct. *See Commonwealth v. Widmer*, 744 A.2d 745 (Pa. 2000). In any event, as the trial court determined in its opinion, there is no merit to Appellant's claim that the evidence was insufficient to support her conviction for DUI-controlled substance under Subsection 3802(d)(2). The relevant DUI statute provides:

> (d) Controlled substances. — An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> \*\*\*
>
> (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(d)(2). "[T]he Commonwealth must simply prove that, while driving or operating a vehicle, the accused was under the influence of a drug to a degree that impaired his or her ability to safely drive that vehicle." *Commonwealth v. Greene*, 340 A.3d 324, 333 (Pa.Super. 2025) (citation omitted).

Here, as the trial court found, Trooper Powers, a certified drug recognition expert, described Appellant's pinpoint pupils, droopy eyelids, inability to follow simple directions, and failure of various field sobriety tests, as well as Appellant's blood tests results that were positive for buprenorphine 2.7 nanograms per milliliter and norbuprenorphine 6.1 nanograms per milliliter. *See* Trial Court Opinion, filed 11/12/25, at 1-7. The officer also testified to Appellant's driving, including crossing of the center yellow lines and cutting corners, which led to the stop of her vehicle. *Id.* at 1. The trial court found Trooper Powers' testimony to be credible, and viewing the evidence in the light most favorable to the Commonwealth, the verdict winner, we agree the evidence was sufficient to establish DUI-controlled substance under Subsection 3802(d)(2). *See Greene*, *supra* (setting forth the scope and standard of review for sufficiency of the evidence claims).

- 15 -

In this vein, she avers she "presented a credible alternative origin of impairment and expert testimony denying" any link between her use of prescribed Suboxone and any impairment to her ability to drive safely. Appellant's Brief at 24. She suggests the Commonwealth's evidence that "a drug was the source of her perceived impairment" was based on tenuous, vague evidence. *Id.* She argues that she offered a credible explanation for why she crossed the yellow lines multiple times (*i.e.*, to avoid potholes), the reasons she performed poorly on the standardized field sobriety and Advanced Roadside Impaired Driving Enforcement tests (*i.e.*, her physical injuries), the reason substances were found in her blood (*i.e.*, she was taking Suboxone as prescribed by her doctor), and the reason her use of Suboxone would not have caused impairment (*i.e.*, she had been taking the drug as prescribed since 2013 such that her body had acclimated to it). After our careful review, we conclude Appellant is not entitled to relief.

Our standard of review for a challenge to the weight of the evidence is well settled. The finder of fact is the exclusive judge of the weight of the evidence: they are "free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." ***Commonwealth v. Champney***, 832 A.2d 403, 408 (Pa. 2003) (citation omitted). "Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." ***Commonwealth v. Sebolka***, 205 A.3d 329, 341 (Pa.Super. 2019)

(citations and emphasis omitted). We will not substitute our judgment for that of the factfinder; nor will we reweigh evidence. *See Interest of D.J.K*., 303 A.3d 499, 507 (Pa.Super. 2023).

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. In order for an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Smith*, 146 A.3d 257, 264–65 (Pa.Super. 2016) (citation, quotation marks, and quotation omitted). We note that we apply the same standard of review whether Appellant was convicted by a jury or at a bench trial. *See id.*

Here, in explaining the reasons it found no merit to Appellant's weight of the evidence claim, the trial court indicated the following:

> The [Commonwealth's] evidence at trial was credible and showed that [Appellant] operated a vehicle on Becks Run Road that was traveling in excess of the speed limit and crossed the double yellow lines on multiple occasions. [Appellant] displayed pinpoint pupils and droopy eyelids, and when put through two (2) sessions of testing, [she] displayed multiple clues of impairment along with indicators of impairment by a narcotic analgesic. Upon being taken into custody, [Appellant] indicated for the first time that she was taking medications. Those medications happened to be narcotic analgesics. Buprenorphine and norbuprenorphine were detected in her blood. [Based on the evidence found credible by the trial court,] [Appellant] operated her vehicle while under the influence of a drug or combination of drugs to a degree which impaired her ability to safely do so.
>
> ***

The defense presented testimony from [Appellant] and Dr. Guzzardi. Both testified repeatedly that [Appellant] was on 8 milligrams of Suboxone a day. [Appellant] also testified that she had been on the same dosage for seven (7) or eight (8) years. The defense introduced into evidence [Appellant's] prescription as Defense Exhibit A. Contrary to the testimony presented, this exhibit [was for a] prescription [of] 24 milligrams of Suboxone a day.

Furthermore, there was absolutely no independent evidence presented to show when [Appellant] was prescribed this medication. [Defense Exhibit A] indicated it was a new prescription with a date of August 23, 2021, two (2) days before her encounter with Officer Powers. The only evidence that she had been on this medication for any length of time came from her own self-serving testimony. As to Dr. Guzzardi, he based his conclusions on information received from [Appellant] in their brief consultations. He admitted to never even seeing her actual prescription until it was shown to him by the Assistant District Attorney during cross-examination.

The court was free to conclude that this was a new prescription that was being taken improperly and was the source of her impairment due to its unfamiliar effects on her.

As to claims that [Appellant] testified credibly that she suffers from physical ailments and other conditions which impaired her ability to complete sobriety testing, these ignore her statements at the time of the stop that she was able to do the tests, the fact that her poor performance had as much to do with an inability to remember and follow clear instructions, and the fact that several years had passed between her arrest and testimony during which time she may have suffered some diminishment of her physical capabilities.

Trial Court Opinion, filed 11/12/25, at 7-9.

We find no abuse of discretion. *See Sebolka*, *supra*. Here, the trial court weighed the evidence presented at the bench trial and deemed Appellant's claim to be without merit. As the trial court explained in its opinion, the trial court found Officer Powers' testimony to be credible and

consistent with his body camera footage. *See* Trial Court Opinion, filed 11/12/25, at 7-9.

Additionally, the trial court was free to disregard Appellant's explanations for her crossing of the yellow lines and performing poorly on the standardized field sobriety and Advanced Roadside Impaired Driving Enforcement tests. *See Champney*, *supra*. The trial court was also free to reject the testimony of Appellant and her expert that Appellant took prescribed Suboxone, which Appellant suggested was the source of the substances found in her blood. *See id.* Further, the trial court was free to reject Appellant's and her expert's claim that Appellant had taken prescribed Suboxone for a lengthy period, and, thus, the medication would not have impaired Appellant's ability to drive safely. *See id.* Simply put, the trial court was free to accept Officer Powers' testimony, which established that Appellant was driving while under the influence of a controlled substance to a degree impairing her ability to drive safely.

There is no indication that the trial court abused its discretion in this case; rather, its findings were well supported by the record. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 07/14/2026